UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TIMOTHY BAIRD,

    Plaintiff,

vs.

MATTHEW C. DANIELS, *et al.,*

    Defendants.

Case No. 1:12-cv-945

Judge Timothy S. Black

**ORDER GRANTING DEFENDANTS' MOTION TO STAY (Doc. 9)**

This civil action is before the Court on Defendants'[1] motion to stay (Doc. 9), and the parties' responsive memoranda (Docs. 12, 13).

## I.  BACKGROUND FACTS AND PROCEDURAL POSTURE

Defendants seek that the Court stay these proceedings pending the conclusion of criminal proceedings against Defendant Matthew C. Daniels.

Plaintiff and Defendant Daniels are, or were, in business together as co-owners of various entities created to develop real estate projects. (Doc. 1 at ¶ 7). Plaintiff and Daniels are co-managers of Kenwood Promenade, LLC (of which Plaintiff is also a member, along with LAD Holdings, LLC, another Defendant in this matter). (Doc. 9, Ex. A). Kenwood Promenade is a 50 percent member of Kenwood Towne Place, LLC. Additionally, Daniels and Plaintiff are members of Bear Creek Capital, LLC. (Doc. 1 at ¶ 22).

---

[1] Defendants include Matthew C. Daniels, LAD Holdings, LLC, American Capital Partners, LLC, Bear Creek Construction, LLC, JACS Sportfishing, Inc., BCC Rivers Crossing Power, LLC, Rivers Crossing Power, LLC, Weatherstone at Mason, LLC, Liberty Towne Center, LLC, and Steve Kelly (collectively, "Defendants").

On November 15, 2012, Daniels was indicted by the Grand Jury for the Southern District of Ohio on multiple counts, including conspiracy, bank fraud, wire fraud, and mail fraud – all related to the failed development and construction of Kenwood Towne Place.  The indictment also references Bear Creek Capital, LLC.  Daniels claims that the criminal trial will involve issues related to his alleged diversion of loan proceeds, many of the same issues contained in the complaint in this civil matter.  Due to the overlap of issues, the imminence of the criminal trial, and the burden on Daniels to proceed with both matters simultaneously, Defendants request that this civil action be stayed pending the conclusion of the criminal proceeding.

## II.    STANDARD OF REVIEW

A stay of civil proceedings due to a pending criminal investigation is "an extraordinary remedy."  *Louis Vuitton v. LY USA, Inc.*, 676 F.3d 83, 98 (2d Cir. 2012).  However, simultaneous criminal and civil cases involving the same or closely related facts may give rise to Fifth Amendment concerns sufficient to warrant a stay of the civil proceedings.  *Claborn v. State of Ohio*, No. 2:11cv679, 2011 U.S. Dist. LEXIS 137629 (S.D. Ohio Nov. 30, 2011).  The district court's discretion whether to stay civil litigation in deference to parallel criminal proceedings is discretionary.  *McCullaugh v. Krendick*, No. 5:07cv2341, 2009 U.S. Dist. LEXIS 87849, at *1 (N.D. Ohio Sept. 9, 2009).  The factors that guide this court's discretion in such circumstances are:

> (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the case, including whether the defendants have been indicted; (3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests of and burden on the defendants; (5) the interests of the courts; and (6) the public interest.

*McCloskey v. White*, No. 3:09cv1273, 2011 U.S. Dist. LEXIS 19877, at *1 (N.D. Ohio Mar. 1, 2011).

### III. ANALYSIS

The *first factor* in granting a stay is whether there is overlap between the criminal proceeding and the civil case. Daniels claims that there is a significant overlap between the subject matter and persons involved in the civil and criminal matters. Specifically, the complaint alleges that Daniels and the other Defendants "defrauded Mr. Baird by transferring monies from entities jointly controlled by Mr. Baird and Defendant Daniels to entities controlled solely by Defendant Daniels." (Doc. 1 at ¶ 2). The complaint also alleges that "Defendants further defrauded various financial institutions and investors by unlawfully transferring monies." (*Id*. at ¶ 3). Plaintiff specifically accuses the Defendants of mail fraud, wire fraud, and bank fraud. (Doc. 1 at ¶¶ 32, 37). Similarly, the criminal matter involves allegations of mail fraud, wire fraud, and bank fraud (among other charges), related to Daniels's role as managing director and/or partner in several interrelated businesses including Bear Creek Capital and Kenwood Town Place.

The indictment alleges that Daniels defrauded Bank of America in connection with a loan for the Kenwood Towne Place project. The complaint in this action alleges that Defendants conducted a scheme to defraud Plaintiff and others in connection with

-3-

the projects of the Joint Entities. The Joint Entities are defined in this case as "Sugarcreek Crossing Permanent, LLC, BCC Bowling Green, LLC, BCC Sandusky Permanent, LLC, BCC Sandusky Two, LLC, Coleman's Crossing, LLC, Sugar Creek Crossing Two, LLC, Symmes Gate Station, LLC, and Newport Pavilion, LLC." (*Id.* at ¶ 7). Kenwood Towne Place is mentioned in only one paragraph of the complaint as illustrative of the ongoing risks Daniels's conduct poses to the Joint Entities. (*Id.* at ¶ 83). In fact, Plaintiff maintains that the complaint carefully avoided alleging any claims arising out of the Kenwood Towne Place project. Plaintiff argues that while the conduct alleged in the indictment and the complaint are similar, the entities, transactions, and projects involved are all different.[2] Plaintiff underscores that this action is not about Kenwood Towne Place and that there is not sufficient overlap between the facts to stay the case. However, the various Joint Entities described in the complaint play a role in the criminal matter. The indictment alleges that Daniels directed another to use Kenwood Towne Place loan proceeds to "fund real estate projects (many of which were financially distressed) other than Kenwood Town Place." (Doc. 9, Ex. 2 at ¶ 9). Although not specifically identified in the indictment, Daniels represents that some of the Joint Entities are alleged to be recipients of the described loan proceeds. Further, the business operations of the Joint Entities were conducted by another jointly-owned entity, Bear Creek Capital. (Do. 1 at ¶ 22). Bear Creek Capital ("BCC") also played a role in the Kenwood Towne Place ("KTP") project – specifically KTP utilized BCC's accounting

---

[2] "[T]he potential for prejudice to a criminal defendant is diminished where private parties, and not the government, are the plaintiffs in the civil action." *Alcala v. Texas Webb Cnty.*, 625 F.Supp.2d 391, 402 (S.D. Tex. 2009).

-4-

staff.  This case will involve investigation of BCC's accounting practices and personnel, the same practices and people central to the criminal case.  (Doc. 12 at 7).  Finally, Daniels believes Plaintiff himself will be a witness in the criminal matter.  The extent to which the issues in the criminal investigation overlap with those presented in the civil case weigh in favor of a stay.

The *second factor* is the status of the cases.  Because staying a civil case pending resolution of a criminal matter is such an "extraordinary" measure, courts ordinarily enter a stay only "when related criminal proceedings are imminent or pending."  *Louis Vuitton*, 676 F.3d at 98.  Daniels's criminal case is scheduled for a jury trial to commence on March 18, 2013.  *See USA v. Daniels*, 1:12cr123 (S.D. Ohio 2012).  While, the Court acknowledges that a stay could last many months, if not years, should the criminal proceedings generate appeals,[3] the status of the criminal proceedings weighs in favor of a stay.

The *third factor* in examining whether to grant a stay is Plaintiff's interest in the resolution of the case.  Clearly Plaintiff seeks an expeditious resolution.  This action is not just an action for money damages.  Among other relief, Plaintiff seeks injunctive relief against Daniels acting as co-manager of the Joint Entities.  (Doc. 1 at ¶ 84).  Plaintiff has reason to believe that Daniels used his status to divert money from the Joint Entities to his own benefit and, particularly, given the financial pressure he is currently under, may continue to do so.  Additionally, Plaintiff claims that Daniels is overtly using

---

[3] None of the other nine defendants in this action have been indicted, and to Plaintiff's knowledge, there is no likelihood that any of them will be indicted.

his authority as co-manager of the Joint Entities to try to force actions which will be detrimental to the interests of the members of the Joint Entities in order to satisfy his immediate needs.  (Doc. 12, Ex. 1 at ¶ 4).

Plaintiff maintains that he needs to conduct discovery in order to support his claims that Daniels should be enjoined from acting as co-manager of the Joint Entities. Defendants requested stay would prevent that discovery indefinitely.  Consequently, the co-managers of the Joint Entities, Defendant Daniels and Plaintiff, will remain at a stalemate and the Joint Entities would likely have to be dissolved.  Ohio Rev. Code § 1705.47(B).  Dissolution would likely destroy any value which the members have in the Joint Entities.  (Doc. 12, Ex. 1 at ¶ 5).  Plaintiff alleges that if he is forced to wait until the conclusion of the criminal proceedings for the opportunity to conduct discovery on his injunctive relief claim, success on the claim will likely have little or no value.  The risk of prejudice to Plaintiff and the Joint Entities weighs against a stay.

*Fourth*, the burden on Daniels in this case would be to force him to potentially relinquish his protected Fifth Amendment right against self-incrimination by testifying in the civil case.  "[T]he strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter." *SEC v. Dresser Indus., Ind.*, 628 F.2d 1368, 1475 (D.C. Cir. 1980).  Although Daniels does have "an absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege[,]" the factor is not absolute and it does support a finding that a stay should be granted where it meets the other factors.  *Rothstein v.*

-6-

*Steinberg*, No. 5:08cv673, 2008 U.S. Dist. LEXIS 107989, at *4 (N.D. Ohio Dec. 23, 2008).[4] While the court "should strive to accommodate a party's Fifth Amendment interests, it also must ensure that the opposing party is not unduly disadvantaged." *Serafino v. Hasbro, Inc.*, 82 F.3d 515, 518 (1st Cir. 1996). Daniels claims that his focus, energy, and resources must be dedicated to defending himself in the criminal matter because his very liberty is at stake.

Despite Plaintiff's argument to the contrary, the Court finds that Defendant Daniels has shown that testifying about the Joint Entities' funds, transactions, and communications puts Daniels at risk of incriminating himself. However, the Court notes that the ten Defendants in this civil action comprise two individuals and eight companies. It is well settled that companies possess no Fifth Amendment rights. *United States v. White*, 322 U.S. 694, 698 (1944) ("The constitutional privilege against self-incrimination is essentially a personal one, applying only to natural individuals"). Accordingly, the eight corporate Defendants cannot seek to stay litigation against them based on rights they do not possess. *IBM v. Brown*, 857 F.Supp. 1384, 1389-1390 (C.D. Cal. 1994) ("Even if it were a sufficient basis for a stay, there is no real Fifth Amendment issue here. The corporate defendants . . . enjoy no Fifth Amendment privilege."). However, if Daniels asserts his Fifth Amendment privilege, the remaining Defendants "will have little to offer in their own defense and hence will be prejudiced by both the inability to defend themselves adequately and an adverse inference" from Daniels' refusal to testify. *Stamile*

---

[4] *See, e.g., United States v. Little Al*, 712 F.2d 133, 136 (5th Cir. 1983) (stay is not appropriate "even though the pendency of the criminal action 'force[s] him to choose between preserving his privilege against self-incrimination and losing the civil suit.'").

*v. Cnty. of Nassau*, No. 10-2632, 2011 U.S. Dist. LEXIS 18607, at *11 (E.D.N.Y. Jan. 31, 2011). Accordingly, the Court finds that the fourth factor weighs in favor of a stay.

*Fifth*, the Court must determine its own interest in granting the stay. Defendants maintain that a stay is in the Court's best interest to resolve the matter expeditiously. Specifically, Defendants claim that a stay would serve to streamline the issues as there will be significant evidence presented in the criminal matter involving some of these same disputes. While this Court would certainly like to resolve the matter expeditiously, the potential for judicial economy is a non-factor in its determination.

The Court further finds as a matter of equity that a stay of this matter is not in the interests of the claimants. The determination of Plaintiff's rights to the property of the alleged Defendant companies is unaffected by the pendency of the criminal appeal. Moreover, the interests of justice militate against further delay, as the companies require upkeep and are depreciating.[5]

*Finally*, the court must consider any public interest supporting or opposing the motion to stay.[6] The public interest is served when fraudulent and misleading commercial practices are stopped. Defendants are allegedly engaged in conduct that directly harms the public, such as bank, wire, and mail fraud. Defendants argue that there

---

[5] Additionally, "it would be perverse if plaintiffs who claim to be the victims of criminal activity were to receive slower justice than other plaintiffs because the behavior they allege is sufficiently egregious to have attracted the attention of the criminal authorities." *Sterling Nat'l Bank v. A-1 Hotels Internat'l, Inc.*, 175 F.Supp. 2d 573, 575 (S.D.N.Y. 2001).

[6] *See also S.E.C. v. Dresser Indus. , Inc.*, 628 F.2d 1368, 1376 (D.C. Cir. 1980) (court should stay a case only "[i]f delay of the noncriminal proceeding would not seriously injure the public interest.").

are other significant public interests at play – namely, protecting constitutional rights, ensuring the fair administration of criminal justice, and maintaining the integrity of the criminal process. *Stamile*, 2011 U.S. Dist. LEXIS 18697 at 24-25 (The public "'interest in the fair administration of criminal justice is clearly high' and is served by 'preserving the integrity of the criminal case.'").

Defendants argue that a stay will serve the public interest by allowing Defendant Daniels to focus his resources on the criminal matter. Conversely, Plaintiff argues that this case was filed because Daniels has treated the Joint Entities as "his resources" and concealed and misrepresented that activity in such a manner that Plaintiff could not act to prevent it at an earlier stage. A stay, which allows Daniels to continue treating the Joint Entities as "his resources" to fund his criminal defense, risks the failure of the real estate developments owned and operated by the Joint Entities. Failure of those developments would undoubtedly have adverse public consequences in those communities. Considering the competing arguments, the Court finds that this factor does not weigh in either party's favor.

## IV. CONCLUSION

Although the Court acknowledges the compelling arguments advanced by Plaintiff, after consideration of each factor, the Court finds that, *in toto*, the facts and law weigh in favor of a stay. Therefore, Defendants' motion to stay (Doc. 9) is **GRANTED**.

**IT IS SO ORDERED**.

Date: 2/7/13  *s/ Timothy S. Black*
Timothy S. Black
United States District Judge