# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY BAIRD, | : | Case No. 1:12-cv-945 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| MATTHEW C. DANIELS, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COUNTS I - IV WITHOUT PREJUDICE (Doc. 24)

This civil action is before the Court on the Daniels Defendants'[1] motion to dismiss (Doc. 24) and the parties' responsive memoranda (Docs. 25, 26).

Plaintiff's complaint alleged six claims for relief arising under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, as well as under Ohio statutory and common law. (Doc. 1 at ¶ 1). The Daniels Defendants now seek dismissal of counts I through IV of the complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 24). Specifically, counts I through IV of the complaint include: I) RICO violations under 18 U.S.C. §1962(c); II) RICO violations under 18 U.S.C. §1962(a); III) RICO violations under 18 U.S.C. §1962(d); and IV) fraudulent misrepresentation. (Doc. 1 at ¶¶ 41-78). Counts V and VI are not at issue here.

---

[1] The Daniels Defendants include Matthew C. Daniels ("Mr. Daniels"), as well as the entities referred to as the "Daniels Entities" which include LAD Holdings, LLC, American Capital Partners, LLC, Bear Creek Construction, LLC, JACS Sportsfishing, Inc., BCC Rivers Crossing Power, LLC, Rivers Crossing Power, LLC, Weatherstone at Mason, LLC, and Liberty Towne Center, LLC (the "Daniels Entities"; collectively with Mr. Daniels, the "Daniels Defendants").

# I.    BACKGROUND

Plaintiff Timothy Baird and Mr. Daniels are, or were, the primary owners of several entities created to develop real estate projects in Ohio, Kentucky, Michigan, and Minnesota.  (Doc. 1 at ¶ 7).  These entities include, but are not limited to, Sugarcreek Crossing Permanent, LLC, BCC Bowling Green, LLC, BCC Sandusky Permanent, LLC, BCC Sandusky Two, LLC, Coleman's Crossing, LLC, Sugar Creek Crossing Two, LLC, Symmes Gate Station, LLC, and Newport Pavilion, LLC (collectively, the "Joint Entities").  (*Id.*)  Each of the Joint Entities was individually formed for the purpose of acquiring a specific property, borrowing money for its development, leasing the space, receiving rent, receiving income, and paying the expenses of the project.  (*Id.* at ¶ 22).  Under the terms of the operating agreements for each of the Joint Entities, Mr. Baird and Mr. Daniels were also the co-managers of each of the Joint Entities.  (*Id.* at ¶ 7).  Both Mr. Baird and Mr. Daniels had the authority to bind the Joint Entities, transfer funds for proper purposes under the terms of the operating agreements, and otherwise manage the Joint Entities.  (*Id.*)

The business operations of the Joint Entities were conducted by a separate entity, Bear Creek Capital, LLC ("Bear Creek"), which was jointly owned by Mr. Baird and Mr. Daniels,.  (Doc. 1 at ¶ 22).  Funds due to the Joint Entities, such as rents, tenant reimbursements, and loan proceeds, would pass through the Joint Entities to Bear Creek. (*Id.*)  As the operating company, Bear Creek was supposed to use those funds to pay the respective obligations of the Joint Entities.  (*Id.*)  Although Bear Creek was a jointly-owned entity, Mr. Baird primarily worked off premises from 2007-08, and he did not

maintain an office in the same physical location as Bear Creek after April 2008.  (*Id*. at ¶ 24).  Accordingly, Mr. Daniels maintained control over the operations of Bear Creek during that time.  (*Id*. at ¶ 22).

Mr. Baird alleges that in December 2008, he learned that the Daniels Defendants, with the assistance of Defendant Steve Kelly and a former financial officer of the Daniels Entities ("Jane Doe"; collectively with the Daniels Defendants and Mr. Kelly, the "Defendants"), had been improperly diverting funds from the Joint Entities to the Daniels Entities.  (Doc. 1 at ¶ 24).  According to the complaint, during the period of January 2007 through December 2008, the Defendants transmitted financial reports on a near monthly basis to Mr. Baird through the United States Postal Service and/or by electronic mail.  (*Id*.)  Mr. Baird asserts that these financial reports falsely stated that the Joint Entities' funds were applied to proper purposes and omitted the improper transfers of funds from the Joint Entities to the Daniels Entities.  (*Id*.)  Mr. Baird also claims that Mr. Daniels made false statements to him during a December 2008 telephone conversation to bolster further the misrepresentations set forth in the false financial reports.  (*Id*. at ¶ 27).

In his complaint, Mr. Baird alleges that the Defendants formed a criminal enterprise in the form of an association-in-fact, as defined under 18 U.S.C. §1961(4).  (Doc. 1 at ¶ 20).  The purpose of the criminal enterprise was to divert funds from Mr. Baird and the Joint Entities to the Daniels Entities.  (*Id*. at ¶ 21).  Furthermore, Mr. Baird alleges that the Defendants participated in at least two acts of racketeering activity, constituting a "pattern," as defined under 18 U.S.C. §1961(5), including mail and wire fraud, bank fraud, and money laundering.  (*Id*. at ¶¶ 29-40).

The Daniels Defendants seek dismissal of Counts I through IV of the complaint pursuant to Fed. R. Civ. P. 12(b)(6).  (Doc. 24).  Specifically, the Daniels Defendants argue that Counts I through III fail to allege the structure of an "enterprise" as required for a RICO claim and that Counts I through IV have not been pled with sufficient particularity.  (*Id*. at 4-9).

## II.   STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted."  To show grounds for relief, Fed. R. Civ. P. 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  While Rule 8 "does not require 'detailed factual allegations,' … it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

However, where the complaint contains allegations of fraud, the plaintiff must also meet the heightened pleading standard set forth under Fed. R. Civ. P. 9(b).  *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012).  Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake."  To meet Rule 9(b)'s heightened particularity requirement, the plaintiff "at a minimum, must 'allege the time, place, and content of the alleged misrepresentation … the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting

from the fraud.'"  *Heinrich*, 668 F.3d at 403 (quoting *United States ex rel. Bledsoe v. Cmty Health Sys.*, 342 F.3d 634, 643 (6th Cir. 2003)).

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the Court must view the complaint in the light most favorable to the plaintiff and take all well-pleaded factual allegations as true.  *Tackett v. M & G Polymers*, 561 F.3d 478, 488 (6th Cir. 2009).  However, pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  In fact, in determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation[.]'"  *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]"  *Id.*

## III.  ANALYSIS

### A.  Structure of the RICO "Enterprise"

The federal RICO statute affords a civil remedy for "[a]ny person injured in his business or property by reason of violations of [18 U.S.C. §1962]."  18 U.S.C. §1964(c). Mr. Baird asserts this private right of action, alleging that the Defendants engaged in the prohibited activities set forth under §1962(a), (c), and (d).  (Doc. 1).  The existence of an "enterprise" as defined under §1961(4) is an essential element under each subsection at issue.  18 U.S.C. §1962(a), (c), and (d).

Under RICO, the term "enterprise" is to be broadly construed in order to effectuate the statute's remedial purpose.  *Boyle v. United States*, 556 U.S. 938, 944 (2009).  The statute does not specify "the outer boundaries of the 'enterprise' concept," however, it

defines the term to "include[] any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *Id*. (citing 18 U.S.C. §1961(4)).  The statute essentially creates two categories of RICO enterprises: (1) legal entities such as corporations and partnerships; and (2) informal associations-in-fact.  *United States v. Turkette*, 452 U.S. 576, 581-82 (1981).

Because the role of the "enterprise" varies within the §1962 subsections, the Court will address them each in turn.

### 1.  18 U.S.C. §1962(c) – Count I

Section 1962(c) proscribes conducting or participating in the conduct of an enterprise through a pattern of racketeering activity.  In order to sufficiently plead a violation of §1962(c), "a plaintiff must plead the following elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Ouwinga v. Benistar 419 Plan Servs*., 694 F.3d 783, 791 (6th Cir. 2012) (internal quotations omitted).

The existence of an "enterprise" and the "pattern of racketeering activity" are distinct elements under the statute.  *Boyle*, 556 U.S. at 947.  Proving the existence of an enterprise requires "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit."  *Turkette*, 452 U.S. at 583.  A pattern of racketeering activity is evidenced by "the requisite number of acts of racketeering committed by the participants in the enterprise."  *Id*.  However, "the evidence used to prove the pattern of racketeering activity and the evidence establishing

an enterprise 'may in particular cases coalesce.'" *Boyle*, 556 U.S. at 947 (citing *Turkette*, 452 U.S. at 583).

An association-in-fact enterprise must have a structure including "at least three features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle*, 556 U.S. at 946. The existence of "an association-in-fact enterprise, 'require[s] a certain amount of organizational structure which eliminates simple conspiracies from [RICO's] reach.'" *Ouwinga*, 694 F.3d at 794 (quoting *VanDenBroeck v. CommonPoint Mortg. Co.*, 210 F.3d 696, 699 (6th 2000)). However, the Supreme Court has recognized that the structure of the enterprise does not need to be formal, sophisticated, or complex. *Boyle*, 556 U.S at 948.

> [A]n association-in-fact enterprise is simply a continuing unit that functions with a common purpose. Such a group need not have a hierarchical structure or a "chain of command"; decisions may be made on an ad hoc basis and by any number of methods – by majority vote, consensus, a show of strength, etc. Members of the group need not have fixed roles; different members may perform different roles at different times. The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies.

*Id*. (citing generally, *Turkette*, 452 U.S. 576).

Although an informal structure will suffice to meet the statutory definition of "enterprise," "[a] properly pled RICO claim must cogently allege activity 'that would show ongoing, coordinated behavior among the defendants that would constitute an association-in-fact.'" *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776, 781 (6th Cir. 2000) (emphasis supplied) (finding pleadings deficient where "the complaint

essentially lists a string of entities allegedly comprising the enterprise, and then lists a string of supposed racketeering activities in which the enterprise purportedly engages") (citing *Frank v. D'Ambrosi*, 4 F.3d 1378, 1386 (6th Cir. 1993)).  Specifically, "the complaint must contain facts suggesting that the behavior of the listed entities is 'coordinated' in such a way that they function as a 'continuing unit.'"  *Begala*, 214 F.3d at 781-82.

Here, Plaintiff fails to plead sufficiently that the Daniels Defendants functioned as an association-in-fact enterprise.  Although the complaint does allege that Defendants mutually engaged in fraudulent conduct, there are no specific factual allegations regarding how the Defendants coordinated and interacted with one another or functioned as a continuing unit.[2]  Similar to *Begala*, Plaintiff's complaint essentially lists the parties

---

[2] The allegations regarding the composition of the alleged enterprise are limited to the following:

> At all times relevant hereto, Defendant Daniels, the Daniels Entities, Defendant Steve Kelly, and Defendant Jane Doe constituted an enterprise, that is, a group of individuals and legal entities associated in fact … as defined in 18 U.S.C. § 1961(4).  The Daniels Enterprise constituted an ongoing organization whose members functioned as a continuing unit for the purpose of achieving the objectives of the enterprise.  The Daniels Enterprise was engaged in, and its activities affected, interstate commerce.

> The Defendants' common purpose was to divert monies from Mr. Baird and the Joint Entities in order to enrich the Daniels Entities and Defendants Daniels, Kelly, and Jane Doe.  In order to achieve this objective, Defendants diverted funds belonging to the Joint Entities, including rents and tenant reimbursements, or for the benefit of the Joint Entities, including the proceeds of construction loans and bond issues, to Daniels Entities.  Defendants made false statements to Mr. Baird, primarily in the form of false periodical financial reports, and to financial institutions and government entities to facilitate and conceal these diversions of funds.
> …

to the alleged enterprise and then describes the alleged pattern of racketeering activities. 214 F.3d at 781. However, there are no factual allegations to show that the Daniels Defendants "*coordinated* in such a way that they function as a continuing unit." *Id.* (emphasis added).

While the Supreme Court's decision in *Boyle* eliminated the formal hierarchy for an association-in-fact enterprise, Plaintiff overstates the leniency *Boyle* affords by arguing that the Supreme Court, and subsequently the Sixth Circuit, "made clear" that "only three structural elements are required for a RICO enterprise." (Doc. 25 at 8 (citing to *Ouwinga v. Benistar 419 Plan Servs.*, 694 F.3d 783 (6th Cir. 2012)). First, however, the *Boyle* opinion states that "an association-in-fact enterprise must have *at least* three structural features," including a purpose, a relationship among the participants, and longevity. 556 U.S. at 946 (emphasis added). And second, Plaintiff fails to account for the truth that there are no *factual allegations* within the complaint to show "relationships among those associated with the enterprise," which is one of the three required structural features of an association-in-fact. *Id.*

---

> In fact, Defendants Daniels, Kelly, and Doe used their control over the accounts of [Bear Creek] and the Joint Entities to divert funds from the Joint Entities to the Daniels Entities.
> …
> The accounts of the Joint Entities and of [Bear Creek] were also under the control of Defendant Daniels assisted by Defendant Kelly and Doe.
> …
> During the period January, 2007 through December, 2008, Defendants Daniels, Kelly, and Doe transmitted general ledgers, check registers, and other financial reports for each of the Joint Entities to Mr. Baird through the United States Postal Service and/or by electronic mail on approximately a monthly basis.

(Doc. 1 at ¶¶ 20-21, 23-24, 26).

Even considering the factual allegations in the light most favorable to the Plaintiff, the allegations regarding the structure of the enterprise are *legal conclusions* couched as factual allegations. *See Twombly*, 550 U.S. at 555. The complaint does not provide any specific facts to evidence a relationship between the participants distinct from the pattern of racketeering activity. *See Boyle*, 556 U.S. at 947 ("[T]he existence of an enterprise is an element distinct from the pattern of racketeering activity and 'proof of one does not necessarily establish the other.'" (citing *Turkette*, 452 U.S. at 583)). Although the existence of the enterprise may be inferred from the evidence showing that alleged participants engaged in a pattern of racketeering activity, the complaint does not sufficiently set forth factual allegations to make such an inference. Instead, Plaintiff relies on the *legal conclusion* that Defendants formed an enterprise in order to then assert that the Defendants collectively engaged in a pattern of racketeering activity. (Doc. 1 at ¶ 20).

Therefore, Plaintiff fails to allege the existence of an association-in-fact enterprise consisting of an organizational structure, as required for a civil RICO claim.

### 2. 18 U.S.C. §1962(a) – Count II

Pursuant to §1962(a), it is unlawful for any person to use or invest funds derived from a pattern of racketeering activity in the acquisition or establishment of any enterprise, which is engaged in or affects interstate commerce. The term "person" is defined under §1961(3) to "include[] any individual or entity capable of holding a legal or beneficial interest in property." Although an enterprise, by statutory definition, could

be a legal entity, <u>the entity cannot be both the "person" and the "enterprise" for purposes of a RICO violation</u>. *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 490 (6th Cir. 2013) (referring to the requirement for separate entities to satisfy the "person" and "enterprise" elements as the "non-identity" or "distinctness" requirements).

The distinctness requirement can be a complex concept to distinguish. *In re ClassicStar*, 727 F.3d at 490. However, the instant case calls for a relatively simple application of the requirement. In support of Count II, Mr. Baird alleges that "[i]n violation of 18 U.S.C. § 1962(a), Defendant Daniels used the income derived, directly or indirectly, from the pattern of racketeering activity … to establish and operate the Daniels Entities, which are engaged in, and whose activities affected, interstate commerce." (Doc. 1 at ¶ 59). Tracking the language of the statute, Mr. Baird equates "Defendant Daniels" with the "person" and the "Daniels Entities" with the "enterprise" for purposes of this claim. 18 U.S.C. § 1962(a).

However, the "Daniels Entities" are specifically defined within the complaint as the collective legal entities, of which "Defendant Daniels is the sole owner, controlling owner, managing member, and/or alter ego." (Doc. 1 at ¶ 19). Furthermore, the "Daniels Enterprise" is defined within the complaint as being comprised of "Defendant Daniels, *the Daniels Entities*, Defendant Steve Kelly, and Defendant Jane Doe." (*Id*. at ¶ 20) (emphasis added). Therefore, the complaint unequivocally states that the "Daniels Entities" are not in fact enterprises of their own, but merely alter egos of Mr. Daniels that collectively form a part of the enterprise. (*Id*. at ¶¶ 19, 20). Accordingly, Mr. Baird's reliance on "Defendant Daniels" as the "person" and the "Daniels Entities" as the

"enterprise" fails to meet the distinctness requirement of RICO, as the "person" and the "enterprise" here would be one and the same.  *See In re ClassicStar*, 727 F.3d at 490.

Therefore, Plaintiff fails to sufficiently allege the existence of an enterprise as required for a claim under §1962(a).

### 3.  *18 U.S.C. §1962(d) – Count III*

Pursuant to §1962(d), it is unlawful to conspire to violate subsections (a) through (c) of the provision.  Mr. Baird alleges that Defendants violated §1962(d) by "knowingly and intentionally conspir[ing] with each other to violate 18 U.S.C. § 1962(c)."  (Doc. 1 at ¶ 68).  The complaint further states that "[i]t was part of the conspiracy that the Defendants agreed that a conspirator would commit at least two acts of racketeering in conducting the affairs of the Daniels Enterprise."  (*Id*. at ¶ 69).  The Court has already determined that Plaintiff failed to sufficiently plead the existence of an enterprise to constitute a violation of §1962(c).

Therefore, to the extent that the existence of an enterprise is necessary as a basis for the conspiracy, Plaintiff's §1962(d) claim fails as a matter of law.

### B.  Heightened Pleading Standard of Rule 9(b)

The Daniels Defendants also move to dismiss because Plaintiff failed to plead Counts I through IV with sufficient particularity to meet the heightened pleading standard of Fed. R. Civ. P. 9(b).  (Doc. 24).  Count IV of the complaint is subject to Rule 9(b), as it specifically alleges fraudulent misrepresentation.  (Doc. 1 at ¶¶ 74-78).  Additionally, because the predicate acts of the RICO claims are each fraud-based offenses, Counts I

through III are also subject to Rule 9(b)'s more rigorous pleading standard. (*Id*. at ¶¶ 41-73).

In order to state a civil RICO claim, Plaintiff must allege that Defendants engaged in "racketeering activity." 18 U.S.C. §1962. Section 1961(1) sets forth an extensive list of indictable offenses, all of which constitute "racketeering activity." As the predicate acts in support of Counts I through III, Plaintiff asserts that Defendants committed mail and wire fraud (18 U.S.C. §§ 1341, 1343), bank fraud (18 U.S.C. § 1344), and money laundering (18 U.S.C. § 1956).

Pursuant to Fed. R. Civ. P. 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To meet the heightened particularity requirement, "the plaintiff[], at a minimum, must "'allege the time, place, and content of the alleged misrepresentation … the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *Heinrich*, 668 F.3d at 403 (quoting *Bledsoe*, 342 F.3d at 643). Although "Rule 9(b) does not require omniscience," it does require that "the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim." *Williams v. Duke Energy Int'l*, 681 F.3d 788, 803 (6th Cir. 2012) (internal quotations omitted).

### 1. *Mail and Wire Fraud (18 U.S.C. §§ 1341, 1343)*

To satisfy the heightened pleading requirement of Rule 9(b), "[w]hen pleading predicate acts of mail and wire fraud … a plaintiff must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'"

*Heinrich*, 668 F.3d at 404 (quoting *Frank v. Dana Corp.* 547 F.3d 564, 570 (6th Cir. 2008)).  Although a RICO plaintiff is not required to plead reliance on the fraudulent statements, he "must show not only that the predicate act was a 'but for' cause of [his] injuries, but also that it was a proximate cause."  *Heinrich*, 668 F.3d at 404-05 (citing *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)).

Plaintiff's complaint states that "Defendants devised or intended to devise a scheme or artifice to defraud Mr. Baird and the Joint Entities of money or property by means of false or fraudulent pretenses, representations, or promises."  (Doc. 1 at ¶ 32).  Plaintiff further alleges that that in order to execute this fraudulent scheme, the Defendants "[o]n approximately a monthly basis during the period January, 2007 through December, 2008 … knowingly transmitted, or caused to be transmitted, by United States Mail and by various wire communications false financial reports on the Joint Entities, including general ledgers and check registers, to Mr. Baird."  (*Id*. at ¶ 34).  Finally, Plaintiff asserts that by executing this scheme, the Defendants "caus[ed] monies belonging to Mr. Baird and the Joint Entities, as well as loan proceeds from financial institutions and/or funds due from Joint Entity tenants for specific purposes … to be fraudulently transferred to [Bear Creek] and then to the Daniels Enterprises."  (*Id*. at ¶ 35).

The mail and wire fraud allegations lack the specificity required to meet Rule 9(b)'s heightened pleading standard.  While Mr. Baird argues that he pled fraud with the degree of particularity that he is able to, the specificity lacking here should be known to Mr. Baird or contained in documents entirely within his control.  Specifically, Mr. Baird

alleges that he *received* documents via U.S. and electronic mail on a near monthly basis that fraudulently misrepresented transfers from the Joint Entities, resulting in millions of dollars in loss, yet he failed to pinpoint the receipt date of any document or allege the substantive misrepresentations contained therein. (Doc. 1 at ¶¶ 25-27).

The general allegations that "Defendants Daniels, Kelly, and Doe" are responsible for transmitting "general ledgers, check registers, and other financial reports ... through the United States Postal Service and/or by electronic mail on approximately a monthly basis," from January 2007 to December 2008 do not rise above a speculative level. (*Id.* at ¶ 26). Assuming, as this Court must, that Mr. Baird did indeed receive such documents from the Defendants, Mr. Baird should be able plead their content with greater particularity. Accordingly, Plaintiff fails to meet the heightened pleading standard.

### 2. Bank Fraud (18 U.S.C. §1344)

To establish bank fraud, Plaintiff must show that Defendants "knowingly execute[d], or attempt[ed] to execute, a scheme or artifice: (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. §1344.

In the complaint, Mr. Baird alleges that:

> Defendants knowingly executed, or attempted to execute, a scheme or artifice to defraud a financial institution ... Specifically, on numerous occasions, Defendants made material misrepresentations to various financial institutions, including but not limited to: misrepresenting the dates upon which construction started and ended, the party performing said work, the amounts owed for such work, whether such amounts owed had been or would be paid, payment of subcontractors, and other false pretenses.

(Doc. 1 at ¶ 37).

The complaint essentially restates the wording of the statute without providing any factual allegations to support the conclusion that Defendants actually committed the acts. Although Plaintiff does provide general examples of the types of misrepresentations made, there are no facts provided to explain the basis for these allegations. (Doc. 1 at ¶ 37). Assuming that these details set forth the content of the misrepresentations with sufficient particularity, Plaintiff still fails to provide the time or place of the alleged activity. *See Heinrich*, 668 F.3d at 403. Accordingly, Plaintiff's allegations regarding bank fraud as a predicate act for the civil RICO claim fail to meet the heightened pleading standard.

### 3. *Laundering of Monetary Instruments (18 U.S.C. §1956)*

To plead sufficiently the predicate act of money laundering, Plaintiff must allege that Defendants conducted financial transactions knowing that the transactions involved the proceeds of specified unlawful activity. 18 U.S.C. § 1956(a)(1). Furthermore, Plaintiff must allege that Defendants engaged in the transaction with the intent to either promote the continuation of the unlawful activity or knowing that the transactions were designed to conceal the proceeds of the unlawful activity. 18 U.S.C. § 1956(a)(1)(A)(i) and (B)(i).

Mr. Baird alleges that "[d]espite knowing that the monies were proceeds of wire and bank fraud, Defendant Daniels conducted various financial transactions with the intent to promote the aforementioned wire fraud and bank fraud." (Doc. 1 at ¶ 39). Also, "[d]espite knowing that the monies were proceeds of wire and bank fraud, Defendant

Daniels conducted various financial transactions knowing that such transactions were designed, in whole or in part, to conceal or disguise the nature, location, the source, the ownership, or the control of the proceeds." (*Id.* at ¶ 40).

Again, the complaint simply restates the wording of the statute and provides no specific factual allegations. (Doc. 1 at ¶¶ 38-40). There are no details regarding the time, place, or scheme of the money laundering transactions.[3] (*Id.*) Furthermore, to the extent that Mr. Baird may be relying on the allegations of wire and bank fraud to provide the necessary specificity, this Court has already noted that those allegations are likewise deficient. Accordingly, Plaintiff's allegations regarding money laundering fail to meet the heightened pleading standard.

### 4. Fraudulent Misrepresentation

Count IV of Plaintiff's complaint alleges a claim for fraudulent misrepresentation. (Doc. 1 at ¶¶ 74-78). To prove a fraud claim under Ohio common law, Plaintiff must show:

> (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

---

[3] Although unrelated to the sufficiency of the pleadings here, the Court notes that the complaint only implicates Mr. Daniels with regard to the money laundering. (Doc. 1 at ¶¶ 38-40). Therefore, as a predicate act of the civil RICO claim, these allegations also fail to set forth the conduct of the enterprise in the racketeering activity.

*Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343, 352 (6th Cir. 2000) (citing *Burr v. Bd. of Cnty. Comm'rs of Stark Cnty.*, 491 N.E.2d 1101, 1105 (Ohio 1986)).

Plaintiff bases the fraud claim on the "false financial reports for the Joint Entities," which "Defendants Daniels, Kelly, and Doe prepared … and transmitted [to him] on approximately a monthly basis during the period January, 2007 through December, 2008." (Doc. 1 at ¶ 75). However, as previously noted in discussing the mail and wire fraud, the complaint does not provide sufficient factual allegations regarding the financial reports to meet the heightened pleading standard of Rule 9(b).

The only reference to the fraudulent financial records states that "[t]he financial records maintained by Defendants to which Mr. Baird has been able to obtain access show that, as of December 31, 2008, [the Joint Entities] had transferred a net aggregate of approximately $14,250,000.00 to [Bear Creek]." (Doc. 1 at ¶ 25). However, this statement fails to specify why the contents of these documents are fraudulent. As the operating company, Bear Creek was supposed to receive income from the Joint Entities in order to pay their financial obligations. (*Id*. at ¶ 22). The allegations state that the transfers reflected in the financial records *occurred*, but fail to specify which transfers were fraudulent and why. (*Id*.) Considering these allegations in a light most favorable to the Plaintiff, the Court assumes that Mr. Baird had some reason to believe that these particular transfers were misrepresentations of Bear Creek's actual accounting. However, Mr. Baird fails to articulate any of those reasons and, therefore, never raises these allegations above a speculative level. Accordingly, Plaintiff fails to plead Count IV with sufficient particularity to meet the heightened pleading standard of Rule 9(b).

18

## IV.  CONCLUSION

Based upon the foregoing, Defendant's motion to dismiss Counts I through IV (Doc. 24) is **GRANTED WITHOUT PREJUDICE**. Plaintiff may seek leave to amend the complaint.  Counts V and VI remain pending.

**IT IS SO ORDERED**.

Date: __4/11/14_____          ____*s/ Timothy S. Black*_____
                                    Timothy S. Black
                                    United States District Judge